JEFFER MANGELS & MITCHELL LLP
BENNETT G. YOUNG (Bar No. 106504)
*byoung@jeffer.com*
CHRISTOPHER K. WHANG (Bar No. 316916)
*cwhang@jeffer.com*
MELODY MOHAMMADI (Bar No. 351274)
*mmohammadi@jeffer.com*
333 Bush Street, 11th Floor
San Francisco, California 94104-2872
Telephone: (415) 398-8080
Facsimile: (415) 398-5584
Attorneys for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| In re: | Case No. 26-30538_____ |
| Pacific Capital Funding Group Inc., | Chapter 11 |
| Debtor. | |
| In re: | Jointly Administered with: |
| Pacific Capital Funding Group Inc.<br>Pacific Private Money Group LLC<br>Private Money Management Group LLC<br>Pacific Mortgage Capital, LLC<br>Pacific Note Fund Management Group LLC<br>Pacific Private Money, Inc.<br>Pacific Private Money Partners LLC<br>Arrival Home Loans LLC<br>Pacific Private Money Fund 1 LLC<br>Pacific Southwest Note Fund LLC<br>Pacific Freedom Fund LLC<br>Pacific Opportunity Fund LLC<br>Arrival Fund I, LLC | Case No. 26-30538 (WJL)<br>Case No. 26-30535 (WJL)<br>Case No. 26-30544 (WJL)<br>Case No. 26-30539 (WJL)<br>Case No. 26-30540 (WJL)<br>Case No. 26-30533 (WJL)<br>Case No. 26-30536 (WJL)<br>Case No. 26-30543 (WJL)<br>Case No. 26-30534 (WJL)<br>Case No. 26-30541 (WJL)<br>Case No. 26-30532 (WJL)<br>Case No. 26-30537 (WJL)<br>Case No. 26-30542 (WJL) |
| Affects: | |

☐ Pacific Capital Funding Group Inc.

☐ Pacific Private Money Group LLC

☐ Private Money Management Group LLC

☐ Pacific Mortgage Capital, LLC

☐ Pacific Note Fund Management Group LLC

MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION TO ESTABLISH PROCEDURES FOR ASSET SALES

Case: 26-30538   Doc# 84   Filed: 08/05/26   Entered: 08/05/26 13:29:10   Page 1 of 17

☐ Pacific Private Money, Inc.

☐ Pacific Private Money Partners LLC

☐ Arrival Home Loans LLC

☐ Pacific Private Money Fund 1 LLC

☐ Pacific Southwest Note Fund LLC

☐ Pacific Freedom Fund LLC

☐ Pacific Opportunity Fund LLC

☐ Arrival Fund I, LLC

☒ All Debtors

**MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION TO ESTABLISH PROCEDURES FOR ASSET SALES**

Date:       August 26, 2026
Time:       10:00 a.m.
Location:   Courtroom 220
Judge:      Hon. William J. Lafferty

**JMM** Jeffer Mangels & Mitchell LLP

80779303v1

2

MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION TO ESTABLISH PROCEDURES FOR ASSET SALES

Pacific Capital Funding Group, Inc., Pacific Private Money, Inc., Private Money Management Group LLC, Pacific Mortgage Capital LLC, Pacific Southwest Note Fund LLC, Pacific Private Money Partners LLC, Pacific Private Money Group LLC, Pacific Private Money Fund LLC, Pacific Opportunity Fund LLC, Pacific Note Fund Management Group LLC, Pacific Freedom Fund LLC, Arrival Home Loans, LLC, and Arrival Fund I, LLC, the debtors and debtors-in-possession (collectively the "**Debtors**"), hereby move (the "**Motion**") this Court pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 6004-1 and 6006-1 of the Local Rules for the Northern District of California (the "**Bankruptcy Local Rules**"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), authorizing the Debtors to sell their mortgage and note assets ("**Notes**"), and real estate-owned ("REO") properties (collectively, with the Notes, the "**Properties**"), pursuant to the proposed procedures[1] set forth herein.

The Debtors seek approval and implementation of procedures related to the sale of their real property, including the following:

1.      Limiting the time and parties to be served with notice of any proposed sale.

2.      Establishing procedures for parties to object or submit overbids (including credit bids) to any proposed sale.

3.      Authorizing any sale of the Properties to be free and clear of any interest in such the Properties of an entity other than the selling Debtor's estate.

4.      Proscribing procedures for the treatment of unexpired leases on the Properties to be sold where a Debtor is the lessor.

The facts and circumstances supporting this Motion are set forth in the concurrently filed *Declaration of William R. Brinkman in Support of Debtors' Motion to Establish Procedures for Real Property Sales* (the "**Brinkman Declaration**").

---

[1] These procedures are available for the Debtors to use if they elect to do so. If appropriate in the event of a particular complicated sale, the Debtors retain the option to file individual sale motions pursuant to section 363 of the Bankruptcy Code in their sole discretion.

MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION TO ESTABLISH PROCEDURES FOR ASSET SALES

Jeffer Mangels & Mitchell LLP

JMM

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges,* General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.    BACKGROUND

### A.    General Background

The Debtors were engaged in the business of originating and servicing "hard money" mortgage loans. The Debtors raised capital from private investors and lent those funds to developers and other parties with those loans secured by liens against real estate.

The Debtors operated through an "opco/fundco" structure, with Pacific Private Money, Inc. ("**PPMI**") serving as the licensed operating entity that originated and serviced mortgage loans. The Debtors raised capital through a series of open-ended investment funds, with approximately 400 individual investors holding roughly 475 accounts, and total invested capital of approximately $140 million. PPMI originated mortgage loans using capital from the fundcos, private individual "Trustee Investors," and debt facilities.

A significant portion of the fundcos' loan portfolios became non-performing due to defaults by several major borrowers, including approximately $10 million in loans to a borrower who died leaving undeveloped land or partially completed construction as collateral, over $20 million in non-performing loans and accrued interest from another borrower, and approximately $12 million from a third borrower. The portfolio of available loans to foreclose on dwindled over time, and a number of remaining loans became under-secured or unsecured because the underlying property was lost to senior lienholders. Compounding these issues, a sharp rise in market interest rates caused the secondary market for the Debtors' mortgage loans to contract, eliminating a key source of liquidity.

By 2023, redemption requests across the Funds exceeded available cash, and in 2025, the

Case: 26-30598   Doc# 84   Filed: 08/05/26   Entered: 08/05/26 13:29:10   Page 4 of 17

JMM Jeffer Mangels & Mitchell LLP

Debtors' cash position became extremely stressed, leading to staff reductions, salary cuts, and elimination of discretionary expenses. In late 2025, the Debtors ceased making distributions and redemptions, and engaged Chief Restructuring Officer William Brinkman to evaluate strategic alternatives, which ultimately led to Chapter 11.

### B. Debtors' Real Property

As of the Petition Date, the Debtors' principal assets consist of: (a) a portfolio of approximately 45 mortgage and note assets held by the Funds ("**Notes**"); (b) approximately ten real estate-owned ("**REO**") properties acquired through foreclosure (collectively, with the Notes, the "**Properties**"); (c) cash; (d) intercompany receivables; and (e) certain equity interests in affiliated and non-Debtor entities.

The Properties are mostly located in cities scattered across Northern California, including South San Francisco, Oakland, San Rafael, Castro Valley, Novato, Mendocino, Sebastopol, and Cotati, while others are located in different states, including Waianae, Hawaii, Brownfield, Texas, and Philadelphia, Pennsylvania. While the Properties have not been appraised or valued, the Debtors believe that there is substantial equity in the Properties. A schedule of the Properties including their addresses, property type, owners, and APN is attached as **Exhibit A** to the Brinkman Declaration.

### C. Need for the Proposed Asset Sale Procedures

The Debtors need to sell the Properties to maximize the value of their estate. Accordingly, the Debtors seek authority to implement a procedure whereby they can sell the Properties in a commercially reasonable manner with a streamlined and efficient procedure that complies with the substantive requirements of the Bankruptcy Code.

Filing and noticing for hearing a separate motion for the sale of each of the Properties would be unduly burdensome. In addition to the professional fees required to prepare those motions, it would require substantial time and attention from the Debtors' management and team. Having to prepare and attend hearings on so many separate motions would also be taxing on other parties in these Chapter 11 Cases, including the official committee of unsecured creditors appointed in these Chapter 11 Cases (the "**Consultation Party**"), the U.S. Trustee, and any other

JMM | Jeffer Mangels & Mitchell LLP

creditors or parties-in-interest that wish to review and be heard on any sales. Finally, numerous motions and hearings would tax the Court's resources.

The most concerning issue is that, without these notice and sales procedures, parties that would otherwise be interested in purchasing one or more of the Properties may not wish to participate in a sale through these Chapter 11 Cases, or their potential bids may be chilled. While this is a concern for all the Properties, sales of the single-family residences could be severely impacted. Imposing a hearing requirement for all those Properties is likely to negatively impact the prices received.

To avoid these administrative costs and risks, the Debtors have worked with their professionals and with the Consultation Party to develop the sales procedures set forth below (the "**Asset Sale Procedures**"), which provide parties notice, overbidding, procedures, and an opportunity to be heard by the Court, among other protections.

## III.     RELIEF REQUESTED

The Debtors request authorization to sell the Properties pursuant to the Asset Sale Procedures. The assets are mainly comprised of single-family residences and smaller multi-family properties, as well as a single commercial property.

## ASSET SALE PROCEDURES

The Asset Sale Procedures are as follows:

1.       Contents of Sale Notice: Prior to any sale of a mortgage and note assets, or REO properties, that the Debtors, in consultation with the Consultation Party, elect to seek approval through these Asset Sale Procedures, the Debtors shall file with the Court a notice (the "**Sale Notice**") that sets forth:

**[DESCRIPTION OF THE PROPERTY]**

**If a Note, then:**

(a) A description of the note and mortgage (or deed of trust) proposed to be sold (the "**Subject Note**"), including the name of the borrower/obligor, the address of the real property securing the Subject Note (the "**Collateral Property**"), the original principal amount of the loan, unpaid interest that has accrued, and the current unpaid principal balance;

Case: 26-30598   Doc# 84   Filed: 08/05/26   Entered: 08/05/26 13:29:10   Page 6 of 17

Jeffer Mangels & Mitchell LLP

JMM

(b) The sale price;

(c) The name(s) of the current holder(s) of record of the Subject Note and the related mortgage or deed of trust;

(d) The name(s) of the holder of any liens, participation interests, servicing interests, or other interests in the Subject Note, if any, listed immediately below the caption of the Sale Notice in compliance with Bankruptcy Local Rule 6004-1(a);

(e) The amount and nature of any known liens, participation interests, or other interests in the Subject Note, their proposed treatment, and the basis for any dispute thereof or any other ground asserted for selling free and clear thereof;

(f) A brief summary of the marketing of the Subject Note that would support the Debtors' representation that it was done in a commercially reasonable manner and the Debtors' conclusion that the price and terms are reasonable and in the best interests of the Debtors' bankruptcy estate according to their business judgment;

(g) The name(s) of the proposed buyer(s) (the "**Buyer**") and any known relationship to the Debtors (these Asset Sale Procedures shall not apply if the proposed purchaser is an insider of the Debtors);

(h) The provision(s) of section 363(f) of the Bankruptcy Code that the Debtors submit authorize the sale free and clear of liens and a summary of the Debtors' evidence supporting such assertion;

(i) The name of the Broker(s), loan sale advisor, or servicer, if any, the date of entry and docket number of the order approving such party's employment, any known connection to the Debtors, and their proposed compensation;

(j) A schedule of any servicing agreements or other executory contracts associated with the Subject Note (collectively, the "**Servicing Agreements**") and their proposed treatment in the Sale, including any cure amounts;

(k) A summary of the current status of the Subject Note, including whether it is performing or non-performing, the borrower's payment history and delinquency status, the maturity date, and the most recent valuation of the Collateral Property (e.g., appraisal or broker price opinion)

Case: 26-30598   Doc# 84   Filed: 08/05/26   Entered: 08/05/26 13:29:10   Page 7 of 17

supporting the proposed sale price;

(l) A summary of any other proposed closing payments, including but not limited to payment of the Broker's or advisor's commission, servicing transfer fees, recording costs for any assignment of mortgage or deed of trust, and the title company's fees (collectively, the "**Closing Costs**");

(m) The estimated net proceeds available to the estate upon conclusion of the Sale, after the satisfaction of any liens, and payment of the Closing Costs; and

(n) The Objection Procedures (as described below).

**If Real Property, then:**

(a) The address of the property proposed to be sold (the "**Subject Property**");

(b) The sale price;

(c) The name(s) of the title holder of the Subject Property;

(d) The name(s) of the holder of any liens or other interests in the Subject Property, if any, listed immediately below the caption of the Sale Notice in compliance with Bankruptcy Local Rule 6004-1(a);

(e) The amount and nature of any known liens or other interests in the Subject Property, their proposed treatment, and the basis for any dispute thereof or any other ground asserted for selling free and clear thereof;

(f) A brief summary of the marketing of the Subject Property that would support the Debtors' representation that it was done in a commercially reasonable manner and the Debtors' conclusion that the price and terms are reasonable and in the best interests of the Debtors' bankruptcy estate according to their business judgment;

(g) The name(s) of the proposed buyer(s) (the "**Buyer**") and any known relationship to the Debtors (these Asset Sale Procedures shall not apply if the proposed purchaser is an insider of the Debtors);

(h) The provision(s) of section 363(f) of the Bankruptcy Code that the Debtors submit authorize the sale free and clear of liens and a summary of the Debtors' evidence supporting such assertion;

Case: 26-30538  Doc# 84  Filed: 08/05/26  Entered: 08/05/26 15:29:10  Page 8 of 17

(i)     The name of the Broker(s), if any, the date of entry and docket number of the order approving the Broker's employment, any known connection to the Debtors, and their proposed compensation;

(j)     A schedule of any unexpired leases or executory contracts (collectively, the "**Leases**") associated with the Subject Property and their proposed treatment in the Sale, including any cure amounts;

(k)     A summary of the Buyer's evidence that it can provide adequate assurance of future performance of the Leases, if any;

(l)     A summary of any other proposed closing payments, including but not limited to payment of the Broker's commission, transfer taxes, recording costs, and the title company's fees (collectively, the "**Closing Costs**");

(m)     The estimated net proceeds available to the estate upon conclusion of the Sale, after the satisfaction of any liens, and payment of the Closing Costs; and

(n)     The Objection Procedures (as described below).

2.     Service of Sale Notice: The Sale Notice shall be served by mail upon: (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the California Department of Financial Protection and Innovation; (iv) all parties that have filed and served a request for special notice; (v) all parties claiming a lien on the Subject Note or the Subject Property, as set forth in the preliminary title report; and (vi) the Official Creditors' Consultation Party appointed in these cases (collectively, the "**Notice Parties**").

3.     Objection Procedures: Any objection to the proposed sale or the assumption of the Leases or request for hearing (the "**Objection**") must be served upon counsel for the Debtors and filed with the Court not more than fourteen (14) calendar days after service of the Sale Notice, unless the Sale Notice specifies a longer period or a shorter period is ordered by the Court (the "**Objection Deadline**").

4.     Credit Bids: Creditors wishing to credit bid for the Subject Note or the Subject Property shall serve notice on the Debtors and the Consultation Party prior to the Objection Deadline. Any creditor successfully credit bidding shall be responsible for the payment of all

Case: 26-30538   Doc# 84   Filed: 08/05/26   Entered: 08/05/26 15:29:10   Page 9 of 17

JMM | Jeffer Mangels & Mitchell LLP

Closing Costs. In the event that a credit bid is received, the Debtors will set the Sale for hearing on no less than twenty one (21) days' notice with opportunity to object.

5.　Overbids: Overbids may be permitted, provided that each Overbid must exceed the then-current highest and best bid by an amount equal to the greater of five percent (5%) of such bid or $10,000 (the "Minimum Overbid Increment"), and only a Qualified Bidder that has submitted a Qualified Bid may submit an Overbid. The Minimum Overbid Increment is intended only to ensure a meaningful, orderly progression of bidding at the Auction and shall not be construed to limit or discourage any Overbid in excess of that amount, and the Debtors may reasonably adjust the Minimum Overbid Increment during the Auction and shall determine the highest and best bid after each round.

6.　Determination of Highest and Best Bid: If two or more Qualified Bidders submit competing bids for the same Subject Note or the Subject Property, the Debtors, in consultation with the Consultation Party, shall determine, in their reasonable business judgment, which bid is the highest and best bid (the "**Winning Bid**"), considering the purchase price, net proceeds to the estate, certainty and timing of closing, and other terms material to the value of the bid. This determination is subject to approval by the Court at the Sale Hearing. Any bidder disputing the determination must raise the dispute by Objection prior to the Objection Deadline or, if raised at an Auction, on the record and by supplemental Objection prior to the Sale Hearing.

7.　No Stalking Horse Procedures: There shall be no stalking horse procedures for the Asset Sales.

8.　If No Objection or Credit Bid: If the Objection Deadline passes without the filing of an Objection or credit bid, or any such response is withdrawn, the Debtors shall file a declaration attesting that no Objection was filed or served on the Debtors (the "**Certificate of No Objection**") and shall submit a proposed order substantially in the form attached to the Sale Notice (the "**Asset Sale Order**"). The Debtors may proceed with closing the Sale of the Subject Note or the Subject Property upon entry of the Asset Sale Order.

9.　Sale Hearing: If an Objection is filed prior to the Objection Deadline and not withdrawn, the Debtors will set a hearing (the "**Sale Hearing**") giving no less than seven (7) days'

MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION TO ESTABLISH PROCEDURES FOR ASSET SALES

notice to (i) the Buyer; (ii) any party that filed an Objection; and (iii) the Notice Parties. If notice of a credit bid is received prior to the Objection Deadline, the Sale Hearing shall be on twenty one (21) days' notice to the parties listed above.

10. Free and Clear: Sales pursuant to these Asset Sale Procedures shall be free and clear of liens and encumbrances to the extent provided under the Bankruptcy Code, with any such liens of any kind or nature to attach to the net proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they had immediately prior to the Sale as against the Subject Note or the Subject Property.

11. Evidentiary Status of Summary of Evidence: The Summaries of Evidence required to be included in the Sale Notice under these Asset Sale Procedures, including the summary of marketing efforts, the summary of the Debtors' evidence supporting a sale free and clear of liens under section 363(f), and the summary of the Buyer's evidence of adequate assurance of future performance under section 365, shall constitute competent and admissible evidence in support of the proposed Sale, without the need for further foundation, testimony, or documentation, unless timely and properly controverted by an Objection filed prior to the Objection Deadline.

***

A proposed form of the Sale Notice for the Asset Sales is attached hereto as **Exhibit B**. Such authorization will allow the Debtors to efficiently sell their Properties in a manner that maximizes revenue for their estate while providing parties in interest notice an opportunity to be heard.

## IV. <u>AUTHORITY FOR RELIEF REQUESTED</u>

### A. <u>The Sale of the Properties in Accordance with the Asset Sale Procedures is a Product of the Debtors' Reasonable Business Judgment.</u>

Section 363(b)(1) of the Bankruptcy Code provides that a trustee, after notice and a hearing, may use, sell, or lease property of the estate other than in the ordinary course of business. 11 U.S.C. § 363(b)(1). The Ninth Circuit has held that a bankruptcy court has considerable discretion in deciding whether to approve a proposed sale of estate property, in light of a sound business justification. *In re Walter*, 83 B.R. 14, 16 (9th Cir. 1988). In determining whether a

Case: 26-30538 Doc# 84 Filed: 08/05/26 Entered: 08/05/26 13:29:16 Page 11 of 17

MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION TO ESTABLISH PROCEDURES FOR ASSET SALES

debtor in possession has complied with this business judgment standard, courts consider whether: (a) there has been any improper or bad motive; (b) the price is fair and the negotiations or bidding occurred at arm's length; and (c) the sale followed adequate procedures, including proper exposure to the market and accurate and reasonable notice to all parties in interest. *In re Castre*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004).

The paramount goal in any proposed sale of estate property is to maximize the proceeds received by the estate. *See In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Delannoy v. Woodlawn Colonial L.P. (In re Delannoy)*, 833 F. App'x 116, 119 (9th Cir. 2020) ("To satisfy § 363, the sale must be proposed in good faith and for a proper purpose and realize optimal value . . . for the estate under the circumstances") (cleaned up). As set forth above, the Debtors have determined that selling the Properties pursuant to the Asset Sale Procedures will maximize the value received for the Properties while avoiding the substantial administrative burden and delay of filing and noticing a separate sale motion for each of the Properties. The Sales will result from arm's-length negotiations, subject to overbidding and Court oversight where applicable, and are in the best interests of the Debtors' estate and creditors. Use of the Asset Sale Procedures accordingly fits squarely within the Debtors' sound business judgment.

**B.      The Asset Sale Procedures Are Appropriate and Will Maximize the Value Received for the Properties.**

Courts have recognized that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate, and therefore are appropriate in the context of bankruptcy sales. *See Silver State Broad., LLC v. Carmel* (In re Silver State Broad., LLC), 2024 Bankr. LEXIS 1935 (B.A.P. 9th Cir. Aug. 20, 2024) (affirming approval of a sale under section 363 where bid procedures were fair and reasonable and a competitive bidding process increased the sale price for the benefit of the estate and its creditors); *In re Fin'l News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) (court-imposed rules for the disposition of assets should provide an adequate basis for comparison of offers and a fair and efficient resolution of bankrupt estates).

The Debtors believe the Asset Sale Procedures will establish the parameters under which the value of the Properties may be tested by both the traditional real estate market and the opportunity to overbid or credit bid, prior to or during the applicable objection period. The Asset Sale Procedures allow the Debtors to sell the Properties in an expeditious and efficient manner, which the Debtors believe is essential to maximizing the value of their estate for their creditors, while also promoting active bidding from seriously interested, financially capable parties. Accordingly, the Asset Sale Procedures are reasonable, appropriate, and within the Debtors' sound business judgment.

### C. <u>The Sale of the Properties Should Be Free and Clear of Liens, Claims, Encumbrances, and Interests.</u>

Pursuant to section 363(f) of the Bankruptcy Code, the Debtors seek authority to sell and transfer their right, title, and interest in the Properties free and clear of all liens, claims, encumbrances, and interests, with any such liens, claims, encumbrances, and interests to attach to the proceeds of the applicable Sale, subject to the rights and defenses of the Debtors and other parties in interest. Section 363(f) provides, in pertinent part, that a trustee may sell property free and clear of any interest of an entity other than the estate only if: (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f)(1)-(5).

Section 363(f) is written in the disjunctive, and a sale may be approved "free and clear" so long as at least one of the enumerated requirements is satisfied. *See A&D Prop. Consultants, LLC v. A&S Lending, LLC (In re Groves)*, 652 B.R. 104, 114 (B.A.P. 9th Cir. 2023); *In re Elliot,* 94 B.R. 343, 345 (E.D. Pa. 1988). Holders of liens, claims, encumbrances, or interests who do not object to a Sale, or who withdraw any objection, will be deemed to have consented to the Sale under section 363(f)(2). Any lienholder that does object will be shown to fall within one or more of the other subsections of section 363(f), including that such holder could be compelled to accept

JMM | Jeffer Mangels & Mitchell LLP

13

a money satisfaction of its interest under section 363(f)(5). A sale free and clear of liens, claims, encumbrances, and interests is necessary to maximize the value of the Properties, and any such lien, claim, encumbrance, or interest will attach to the applicable sale proceeds with the same validity, priority, force, and effect as it had immediately prior to the Sale.

Any liens, claims, encumbrances, or interests that exist immediately prior to the closing of any sales will attach to the Sale proceeds allocated to the Debtors with the same validity, priority, force, and effect as they had at such time, subject to the rights and defenses of the Debtors or any party in interest. The Debtors submit that holders of liens, claims, encumbrances, or interests, if any, will be adequately protected by the availability of the proceeds of the Sales to satisfy their liens, claims, encumbrances, or interests.

**D.      Credit Bidding Should Be Authorized.**

A secured creditor is allowed to "credit bid" the amount of its allowed claims in a sale of assets in which it has a security interest. Bankruptcy Code section 363(k) provides, in relevant part, that unless the court for cause orders otherwise, the holder of a claim secured by property that is the subject of the sale "may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property." 11 U.S.C. § 363(k). Even if a secured creditor is undersecured as determined in accordance with Bankruptcy Code section 506(a), section 363(k) allows such secured creditor to bid the total face value of its claim and does not limit the credit bid to the creditor's economic value. See *In re Submicron Sys. Corp.,* 432 F.3d 448, 459-60 (3d Cir. 2006) (explaining that "[i]t is well settled . . . that creditors can bid the full face value of their secured claims under section 363(k)"); *POLK 33 Lending, LLC v. THL Corp. Fin., Inc. (In re Aerogroup Int'l, Inc.),* 620 B.R. 517, 523 (D. Del. 2020) (citing *Id.*).

Absent cause for restriction on credit bidding, courts have consistently ruled in favor of reserving a secured creditor's right to credit bid its claim. See, *e.g., In re Gardens Reg'l Hosp. & Med. Ctr., Inc.,* No. 2:16-bk-17463-ER, 2016 Bankr. LEXIS 4714, at * 34 (Bankr. C.D. Cal. July 6, 2016) (order approving Bid Procedures which authorized parties with secured claims to credit bid under section 363(k)); *In re T Asset Acquisition Co., LLC,* Nos. 2:09-31853-ER, 2010 Bankr.

Case: 26-30538   Doc# 84   Filed: 08/05/26   Entered: 08/05/26 13:29:16   Page 14 of 17

JMM Jeffer Mangels & Mitchell LLP

LEXIS 4052, at *8 (Bankr. C.D. Cal. Jan. 28, 2010) (same); *In re Source Home Entm't, LLC,* No. 14-115533 (KG) (Bankr. D. Del. July 21, 2014) (same); *In re Fisker Auto Hldgs, Inc.,* No. 13-13087 (KG) (Bankr. D. Del. Jan. 23, 2014) (same); *In re PTC Alliance Corp.,* No. 09-13395 (Bankr. D. Del. Nov. 6, 2009) (order authorizing, but not directing, the administrative agent to credit bid); *In re Hayes Lemmerz Int'l, Inc.,* No. 09-11655 (Bankr. D. Del. Sept. 22, 2009) (order authorizing the sale of substantially all of the debtor's assets in a $155 million credit bid over a $151.5 million all-cash bid); see also *Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.),* 432 F.3d 448, 459-60 (3d Cir. 2006) (citations omitted).

In order to comply with section 363(k) of the Bankruptcy Code, the Debtors request that the order approving the Asset Sale Procedures authorize the Debtors to accept credit bids from secured creditors in an amount up to that of their allowed secured claim. Additionally, to ensure that the Debtors' fees and costs are covered, the Debtors request that the Court order such credit bids to include a cash payment sufficient to pay all Closing Costs.

### E. The Applicable Leases Should Be Assumed and Assigned by the Purchasers.

Section 365(a) of the Bankruptcy Code authorizes a debtor in possession, subject to the Court's approval, to assume or reject any executory contract or unexpired lease. 11 U.S.C. § 365(a). Courts review a debtor's decision to assume and assign a lease under the business judgment standard, presuming that the debtor in possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the estate. *Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007).

If a Lease is in default, section 365(b)(1) requires that, before assuming the Lease, the Debtors cure the default or provide adequate assurance that they will promptly do so, compensate the counterparty for any actual pecuniary loss resulting from the default, and provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1). Section 365(f)(1) permits the Debtors to assign a Lease notwithstanding a provision prohibiting assignment, so long as the Debtors assume the Lease in accordance with section 365 and provide adequate assurance of future performance by the assignee, whether or not there has been a default. 11 U.S.C. § 365(f)(1)-(2). The meaning of

MOTION OF DEBTORS AND DEBTORS IN POSSESSION TO ESTABLISH PROCEDURES FOR ASSET SALES

Case: 26-30538    Doc# 84    Filed: 08/05/26    Entered: 08/05/26 13:29:16    Page 15 of 17

"adequate assurance of future performance" depends on the facts and circumstances of each case and should be given a practical, pragmatic construction. *EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 593 (S.D.N.Y. 1992).

The Debtors submit that it is an exercise of their sound business judgment to assume and assign the Leases to the Buyers in connection with the Sales, and that doing so is in the best interests of the Debtors, their estate, their creditors, and all parties in interest. To the extent any defaults exist under a Lease, such default will be cured, or adequate assurance of a prompt cure will be provided, by the applicable Buyer prior to assumption and assignment. If an Objection is filed, the Debtors will present facts prior to or at the Sale Hearing demonstrating the financial credibility of the Buyer and its willingness and ability to perform under the Lease, thereby satisfying the requirements of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

**F.      The Asset Sale Procedures' Sale Notice Provision is Reasonable Under the Circumstances.**

Bankruptcy Rules 2002(a) and (c) require the Debtors to notify creditors of a proposed sale of estate assets, including the terms and conditions of the sale and the deadline for filing objections, unless the Court orders otherwise. Fed. R. Bankr. P. 2002(a), (c). Given the number of Properties described above, the Debtors submit that the proposed limitation on service of the Sale Notice is appropriate and reasonably calculated to provide interested parties with timely and proper notice of the Sales, the opportunity to object or overbid, and any Sale Hearing, without imposing the substantial expense on the estate of serving every party in interest with notice of each individual Sale.

**V.      REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004 AND 6006.**

Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, an order authorizing the sale of property under section 363 of the Bankruptcy Code is automatically stayed for fourteen days after entry of the order. Similarly, under Bankruptcy Rule 6006(d), unless the Court orders otherwise, an order authorizing the assignment of an unexpired lease is automatically stayed for fourteen days after entry. The purpose of these rules is to provide sufficient time for an objecting party to seek a stay pending appeal before the order is implemented.

MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION TO ESTABLISH PROCEDURES FOR ASSET SALES

The Debtors request that the Court waive the fourteen-day stay periods imposed by Bankruptcy Rules 6004(h) and 6006(d) so that the Sales may close without unnecessary delay. The Asset Sale Procedures already afford parties in interest notice and an opportunity to object, and waiver of the stay will allow the Debtors to close Sales promptly where no objection has been raised, consistent with the goal of maximizing value for the benefit of the Debtors' estate and creditors.

## VI. RESERVATION OF RIGHTS

Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or waiver of the Debtors' rights to dispute such claim subsequently.

## VII. NOTICE

Notice of this Motion is being provided to: (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the California Department of Financial Protection and Innovation; and (iv) all parties that have filed and served a request for special notice, and (v) the Official Creditors' Consultation Party appointed in these cases. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein.

DATED: August 5, 2026                 JEFFER MANGELS & MITCHELL LLP

                                      By: _____
                                          BENNETT G. YOUNG
                                          CHRISTOPHER K. WHANG
                                          MELODY MOHAMMADI
                                      Attorneys for Debtors and Debtors-in-Possession

MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION TO ESTABLISH PROCEDURES FOR ASSET SALES

Case: 26-30538    Doc# 84    Filed: 08/05/26    Entered: 08/05/26 13:29:16    Page 17 of 17